UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR89 JAR (SPM) |
| | ) | |
| CORTEZ DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements (Doc. 46) be **GRANTED, in part, and DENIED, in part.** The motion should be granted with respect to Defendant's pre-*Miranda* statement that the closet in the residence belonged to him; but, should be denied in all other respects.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence (Doc. 48) be **DENIED.**

**IT IS HEREBY ORDERED** that Defendant's Motion for Disclosure of Confidential Informant (Doc. 54) is **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set before the **Honorable John A. Ross** on **April 2, 2018, at 9 a.m.**

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated February 1, 2018.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16CR89JAR (SPM) |
| | ) | |
| CORTEZ DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C. §636(b). Defendant Cortez Davis is charged in a one count indictment with being a felon in possession of a firearm. Davis was arrested on January 4, 2016, following execution of a search warrant at his residence during which police seized physical evidence, including two firearms, and obtained a statement from Davis.

Davis filed a motion to suppress statements in which he asserted that any statements he made were not voluntary, were made without any *Miranda* warnings, and were made as the result of an unlawful arrest. (Doc. 46). Davis also filed a motion to suppress physical evidence in which he asserted, among other things, that the search warrant was not supported by probable cause, the search warrant contained materially false statements reflecting the affiant's bad faith in applying for the warrant, and agents failed to announce their identity prior to entering the premises to be searched. (Doc. 48). Finally, Davis filed a motion for disclosure of the confidential informant referenced in the search warrant affidavit based upon *Rovario v. United States,* 353 U.S. 53, (1957). (Doc. 54).

On January 18, 2018, Davis and counsel for all parties appeared for an evidentiary hearing. The United States presented the testimony of St. Louis Metropolitan Police Department Officer Keith Burton along with three exhibits, which included a copy of the search warrant and warrant affidavit. Counsel for Davis questioned Officer Burton but did not offer any additional testimony or evidence. At the close of the evidentiary hearing, counsel for Davis requested, and was granted, time to file a post-hearing brief, which was filed on January 25, 2018. *See* Doc. 59. The matter is now ready for a ruling.

Based on the evidence presented at the evidentiary hearing and the written submissions of the parties I make the following findings of fact and conclusions of law.

## I.  FACTUAL FINDINGS

### A.  THE SEARCH WARRANT

On December 29, 2015, Officer Keith Burton applied for a warrant seeking authorization to search a residence located at 2919 Chippewa Apt. A, and to seize heroin or any other illegal narcotics, currency, firearms, and other instruments of crime. *See* Gov. Ex. 1. The search warrant application was supported by an affidavit which was attested to and signed by Officer Burton (the "Affidavit"). *Id.* According to the Affidavit, Officer Burton was advised by an individual identified in the affidavit only as "John/Jane Doe" or "JJD" that an individual known to JJD as "Tez" was selling heroin from the target residence; that JJD provided Officer Burton with a telephone number believed to belong to "Tez"; that JJD had been in the residence within 48 hours before the affidavit was submitted and had observed "Tez" in possession of heroin packaged for sale; that JJD knew "Tez" had served time in federal prison; and JJD had observed "Tez" in possession of a semi-automatic handgun while JJD was in the residence. *Id.*

Officer Burton further attested that, in addition to the observations of JJD, a computer inquiry of the telephone number provided by JJD revealed Cortez Davis, who matched the physical description JJD provided. Govt. Ex. 1. Officer Burton further attested that JJD identified Davis as "Tez" when shown a photograph of Davis and that a police database inquiry revealed an extensive criminal history for Davis including a federal conviction and imprisonment for distribution of crack cocaine. *Id.*

Officer Burton attested that on December 23, 2015, he conducted physical surveillance of the target residence and personally observed heavy pedestrian traffic entering and exiting the residence and observed someone matching Davis's description standing in the front yard of the residence. *Id.* However, after observing Officer Burton's marked police car the person matching Davis's description quickly entered the residence. *Id.* Finally, the Affidavit stated that a "no knock" warrant was being requested due to Davis's extensive criminal history and the belief that he was armed with firearms. *Id.*

The Affidavit and warrant application were presented to St. Louis City Circuit Judge Brian Hettenbach on December 29, 2015. In addition to Officer Burton, JJD appeared before Judge Hettenbach. After being duly sworn, both Officer Burton and JJD signed the Affidavit. *Id.* Judge Hettenbach issued the warrant on December 29, 2015, and it was executed on January 4, 2016.

At the evidentiary hearing, Officer Burton credibly testified that he first encountered JJD approximately one week before he applied for the warrant. JJD was not a known or documented confidential source who had previously provided information to the St. Louis Metropolitan Police Department. Rather, JJD was simply a "tipster" or "concerned citizen" who came forward with information of alleged criminal activity. Consistent with the Department's policy, JJD's

identity was concealed in the Affidavit for his/her protection. After the first encounter with JJD, Officer Burton conducted the investigation outlined in the Affidavit to corroborate the information provided by JJD. Less than 48 hours before applying for the warrant, Officer Burton contacted JJD a second time and obtained confirmation that JJD had recently been in the target residence and had seen narcotics in the residence during that timeframe. Officer Burton's third contact with JJD was when JJD appeared before Judge Hettenbach to sign the Affidavit under oath. Although the Affidavit requested permission to enter without knocking, it is unclear from the face of the warrant itself whether Judge Hettenbach granted permission to do so.

### B. EXECUTION OF THE SEARCH WARRANT ON JANUARY 4, 2016

On January 4, 2016, Officer Burton and a SWAT team, which did not include any federal agents, executed the warrant issued by Judge Hettenbach. The SWAT team breached the entry doors to the residence, but it is unclear from the hearing testimony whether they knocked before breaching the door. Upon entering the residence, SWAT team officers observed marijuana in plain view. In addition, an adult female, Ms. Holmes, who was believed to be Davis's girlfriend, told the officers that Davis had run to the back bedroom or the rear of the residence as the SWAT team was entering. Officers from the SWAT team placed Davis in handcuffs and secured the residence so the search warrant could be executed. Officer Burton and a search team followed the SWAT team into the residence and conducted the search. Ultimately, they seized two firearms, suspected marijuana, suspected heroin, ammunition, and paperwork belonging to Davis. *See* Govt. Ex. 1. Some of the items were hidden in the residence. For example, the firearms were found tucked in a child's toy box and ammunition was found in a closet and on top of the refrigerator in the kitchen. Officer Burton photographed items observed and seized during the search, including items used

for packaging narcotics such as plastic baggies and boxes for a digital scale. *See* Govt. Exs. 2A-2T.

### C.  STATEMENTS MADE BY DAVIS

During the execution of the search warrant, Officer Burton searched a closet in which he found a box of ammunition along with men's clothing. Officer Burton asked Davis if the closet belonged to him and Davis stated that it did. Davis was not advised of his *Miranda* rights before he made this statement.

After Officer Burton completed the search of the residence and seized the firearms, heroin, and other items, he placed Davis under arrest and read him his *Miranda* rights from a card. After acknowledging that he understood his rights, Davis told the police that when he saw the SWAT team coming into the residence, he ran to the back bedroom and hid his drugs and firearms. At that point, Davis was transported to the police station for processing.

Once at the police station, Officer Burton presented Davis with a Warning and Waiver form, which Officer Burton read to Davis, and which Davis initialed and signed before writing out a brief statement. *See* Govt. Ex. 3. On the Warning and Waiver form, Davis wrote "I saw SWAT coming and hid the wepons [sic] in the room in the toy box." *Id.*

There was no evidence presented to suggest that Officer Burton, or any other officer, threatened or intimidated Davis in any way prior to Davis making the verbal statements at the residence or the written statement at the police station. Officer Burton testified, credibly, that when he questioned Davis, he did not have his gun drawn, did not make Davis any promises, and did not raise his voice or otherwise threaten or attempt to intimidate Davis. The exchange between Officer Burton and Davis was cordial, and the entire encounter between the police and Davis—from execution of the search warrant through Davis's written statement—lasted no more than two hours.

## II.  CONCLUSIONS OF LAW

### A.  MOTION TO SUPPRESS PHYSICAL EVIDENCE (DOC. 48)

Davis contends all evidence seized from his residence must be suppressed because the search warrant was not supported by probable cause and because the Affidavit contained false and/or misleading statements. Based on the foregoing factual findings and, for the reasons set out below, I recommend that Davis's motion be denied.

#### 1.    *The Search Warrant Was Supported by Probable Cause*

The Fourth Amendment requires that search warrants be based on probable cause. *United States v. Montes-Medina,* 570 F.3d 1052, 1059 (8th Cir. 2009). Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). " 'Probable cause requires only a showing of fair probability, not hard certainties.' " *United States v. Tripp*, 370 F. App'x. 753, 757 (8th Cir. 2010) (quoting *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008)).

The task of the judge issuing a search warrant is to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for . . . concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (internal quotation marks omitted); *see also Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). "Deference is accorded an issuing [judge's] probable cause determination . . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978). When the judge relied solely on the affidavit presented to him or her, "'only that

6

information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982)). Affidavits must be read in "a commonsense and realistic fashion." *United States v. Caldwell*, 864 F.2d 71, 74 (8th Cir. 1988) (citation omitted).

Where the search warrant affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to, but is not dispositive of, the probable cause determination. *Gates,* 462 U.S. at 230. The Eighth Circuit has identified several factors the court should consider in determining whether information from an informant is reliable. For example, "[a]n informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). The Eighth Circuit has also held that "there are indicia of reliability in 'the richness and detail of a firsthand observation.' " *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quoting *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990); *see also Gates*, 462 U.S. at 234 (finding that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight"); *Williams*, 10 F.3d at 594 (noting that source's information was timely and "based on the informant's first-hand observations, not merely from rumor or innuendo"). Furthermore, "[t]he circumstances of personal questioning may also enhance reliability and credibility." *Buchanan,* 574 F.3d at 562; *see also United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when a law enforcement officer meets personally with the informant to assess his

credibility).

As the foregoing factual findings demonstrate, the Affidavit in this case was based substantially on information provided by JJD. Although JJD was an unknown and untested informant, the information provided by JJD, and reflected in the Affidavit, bore sufficient indicia of reliability to support a finding of probable cause. For example, JJD had seen, firsthand, narcotics and firearms in Davis' possession in the target residence up to and including 48 hours before the search warrant was obtained. In addition, both Officer Burton and the issuing judge had an opportunity to assess JJD's credibility when JJD appeared, in person, to sign the warrant affidavit. Finally, the information provided by JJD was partially corroborated by Officer Burton's independent investigation and observations during physical surveillance of Davis's residence described in the warrant affidavit.

For example, the Affidavit indicated that JJD advised Officer Burton that an individual known only to JJD as "Tez" was selling quantities of raw heroin from the target residence. JJD gave Officer Burton a general description of "Tez" and provided Officer Burton with a telephone number used by "Tez". Officer Burton investigated and discovered that the user of the telephone number was the Defendant, Cortez Davis. Officer Burton's investigation also revealed that Davis matched the general description given by JJD. When shown a photograph of Davis, JJD identified the person in the photograph as "Tez." In addition, Officer Burton's REJIS inquiry also allowed him to corroborate JJD's statement that Davis or "Tez" was a convicted felon who had served time in Federal Prison. Perhaps most significantly, consistent with the information provided by JJD, while conducting physical surveillance of the target residence Officer Burton observed an individual matching Davis's physical description exit and re-enter the target residence and observed heavy pedestrian traffic entering and exiting the target residence.

Officer Burton's independent corroboration, albeit partial, helped to bolster the reliability and credibility of JJD's information and the finding of probable cause. Indeed, "an informant who is correct about some things more likely will be correct about critical unverified facts." *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986) (citing *Spinelli v. United States*, 393 U.S. 410, 427 (1969)); *Gates* 462 U.S. at 233-34. "[W]here the informant's information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992).

For all of the foregoing reasons, Judge Hettenbach's decision to issue the warrant was supported by probable cause.

## 2.    *The Good Faith Exception Applies*

Even if the warrant affidavit somehow fell short of supplying probable cause, the good faith exception under *United States v. Leon*, 468 U.S. 897, 922 (1984), applies. In *Leon,* the Supreme Court held that even if a search warrant is later held to be unsupported by probable cause, the exclusionary rule should not be applied to bar the admission of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate." *Id.* at 900, 922-23. *See also United States v. Clay,* 646 F.3d 1124, 1127 (8th Cir. 2011) (quoting *Leon,* 468 U.S. at 900)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Clay*, 646 F.3d at 1127. Under *Leon,* suppression is appropriate only if the issuing judge abandoned his detached and neutral role, or (i) the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause; (ii) the affidavit is so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable; or (iii) the warrant is so facially

9

deficient that no police officer could reasonably presume the warrant to be valid. *Leon,* 468 U.S. at 926; *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011). In assessing whether police relied in good faith on the validity of a warrant, the court considers the totality of the circumstances, including any information known to the officer but not included in the affidavit. *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012).

Here, Davis has neither asserted nor offered evidence to suggest that Judge Hettenbach abandoned his detached and neutral role in issuing the search warrant. In addition, Davis's motion to suppress asserts that the Affidavit contained false information; however, those assertions were not substantiated at the hearing, and there is no credible evidence of record to suggest that Officer Burton was dishonest or reckless in preparing the Affidavit. Nor does the evidence of record support a finding that Officer Burton could not have harbored an objectively reasonable belief in the existence of probable cause or that the warrant was so facially deficient that no police officer could reasonably presume the warrant to be valid.

Indeed, for the reasons set out above and in light of the factual findings, not only did the Affidavit contain sufficient indicia of probable cause, but facts known to Officer Burton that were not reflected in the Affidavit demonstrate that it was objectively reasonable for Officer Burton to believe probable cause existed. For instance, although the timeline of events is not entirely clear from the Affidavit itself, Officer Burton testified credibly at the evidentiary hearing that he had three contacts with JJD. Officer Burton's first contact with JJD occurred approximately one week before he applied for the warrant. After the first encounter with JJD, Officer Burton conducted the investigation outlined in the warrant affidavit to corroborate the information provided by JJD. Less than 48 hours before applying for the warrant, Officer Burton contacted JJD a second time and obtained confirmation that JJD had recently been in the target

10

residence and had seen narcotics in the residence during that timeframe. Officer Burton's third contact with JJD was when JJD appeared before Judge Hettenbach to sign the Affidavit under oath.

The testimony presented suggests that both Officer Burton and the issuing judge had an opportunity to assess for themselves whether JJD's firsthand account of what he or she observed at the target residence was reliable. Although Officer Burton was only able to confirm some of what JJD told him, Officer Burton's verification through surveillance and other investigation helped to bolster Officer Burton's confidence in the reliability of all of the information provided by JJD.

In sum, after considering the totality of the circumstances, including information known to the officer but not included in the Affidavit, the undersigned finds that the police relied in good faith on the validity of the warrant.

### B.  MOTION TO SUPPRESS STATEMENTS (DOC. 46)

Davis contends any statements he made to police must be suppressed because they were not voluntary, were made without any *Miranda* warnings, and were made as the result of an unlawful arrest. (Doc. 46). As the factual findings demonstrate, prior to executing the search warrant at Davis's residence, Officer Burton confirmed that Davis was a convicted felon who had served time in federal prison. Davis was placed under arrest after execution of the search warrant which resulted in the seizure of two firearms and ammunition from his residence. His arrest was lawful as the officers had probable cause to believe he had committed a crime. Any statements he made following his arrest are not the fruit of an unlawful arrest.

As the foregoing factual findings demonstrate, Davis made a statement ***before*** Officer Burton advised him of his *Miranda* rights and two statements ***after*** he was placed under arrest and

advised of his *Miranda* rights. Specifically, before being advised of his *Miranda* rights, in response to a question by Officer Burton, Davis stated that a closet in the residence where officers found a box of ammunition and men's clothing belonged to him. After being advised of his *Miranda* rights, Davis told Officer Burton that when he saw the SWAT team coming into the residence, he ran to the back bedroom and hid his drugs and firearms. Later, at the police station, Davis reduced that statement to writing on the police department's Waiver and Warning Form. *See* Govt. Ex. 3 (Waiver and Warning Form stating "I saw SWAT coming and hid the wepons [sic] in the room in the toy box."). *Id.*

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. Unless suspects are warned of their Fifth Amendment rights, any pretrial statements elicited from them are inadmissible at trial. *Id.* at 492.

### 1. *Davis's Pre-Miranda Statement Should Be Suppressed*

The protections set forth by the United States Supreme Court in *Miranda* are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). "Interrogation is not limited to express questioning; it includes words or conduct that the officer should know are 'reasonably likely to illicit an incriminating response from the suspect.'" *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). However, not all statements made while in custody

are products of interrogation.  Rather, it is well-established that the United States is not precluded from introducing into evidence voluntary or spontaneous statements not in response to an interrogation whether or not *Miranda* warnings are given. *United States v. McGlothen,* 556 F.3d 698, 701 (8th Cir. 2009); *see also Chipps*, 410 F.3d at 445; *United States v. Hawkins,* 102 F.3d 973, 975 (8th Cir. 1996); *Hatten*, 68 F.3d at 262 ("[A] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings.").

Here, while there is no dispute that Davis had not been formally placed under arrest at the time he admitted that he owned the closet where ammunition was found, the evidence demonstrates that he was in custody for purposes of *Miranda.* A defendant is in custody for purposes of *Miranda* when there is a "'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Giboney,* 863 F.3d 1022, 1027 (8th Cir. 2017) *(quoting United States v. Czichray,* 378 F.3d 822, 826 (8th Cir. 2004)). The Eighth Circuit has made clear that the determination is not made from the interrogator's perspective. Rather, the only relevant inquiry is "how a reasonable person in [the suspect's] position would have understood the situation." *Id.; United States v. Perrin*, 659 F.3d 718, 719 (8th Cir. 2011); *United States v. Muhlenbruch*, 634 F.3d 987, 995-96 (8th Cir. 2011).

In *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit identified six factors that should inform the court's analysis in determining whether someone is in custody for the purposes of *Miranda.*  The first three factors, which if present tend to show that a defendant was not in custody, are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave . . ., or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of

movement during questioning; [and] (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions.

*Giboney,* 863 F.3d at 1027 (quoting *Griffin,* 922 F.2d at 1349). The remaining three factors, if present, favor a finding that the defendant was in custody during the interrogation. *Id.* Those factors are: "(4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning." *Id.*

In this case, all of the *Griffin* factors, except the fourth factor—use of strong arm or deceptive tactics—favor a finding that Davis was in custody. There is no evidence that, at the time Officer Burton asked about the closet, Davis was informed that he did not have to answer Officer Burton's questions, that he was not under arrest, and/or that he was free to leave. In fact, at the time Davis was asked about the closet containing the ammunition, Davis was restrained in handcuffs in a police-dominated environment during the execution of a search warrant after a SWAT team forcibly entered Davis's residence. After the search team completed the search and after Davis answered the initial question about the closet, he was formally placed under arrest and eventually was transported to the police station for processing. Given that all but one of the *Griffin* factors support a finding that Davis was in custody, I conclude that Davis was in custody for purposes of *Miranda* at the time Officer Burton questioned him about his ownership of the closet.

The evidence does not support a finding that Davis made the statement voluntarily. Indeed, Officer Burton conceded at the hearing that Davis's statement about the closet was not spontaneous or otherwise voluntary but was made in response to a question posed by Officer Burton during the execution of the search warrant. As set out above, at the time Officer Burton asked and Davis answered the question, Davis was handcuffed and confined to a specific area of his home while officers executed the search warrant.

14

Davis's statement regarding his ownership of the closet where ammunition was found should be suppressed because it was an involuntary statement given without a *Miranda* warning.

### 2. *Davis's Post-Miranda Statements Were Voluntary*

Davis's verbal and written statements that he hid the gun and drugs when the SWAT team entered the residence were made after he was advised of his *Miranda* rights. As such, suppression is warranted only if Davis's post-*Miranda* statements were involuntary. It is well-established that the privilege against self-incrimination can be waived. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). To establish a valid waiver, the Government must demonstrate by a preponderance of the evidence that "the waiver was knowing, intelligent, and voluntary[.]" *Id.* The standard for determining the voluntariness of either a waiver of *Miranda* rights and/or a statement is the same. *Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)). This determination must be made by looking at the totality of the circumstances, including both "the conduct of the officers and the characteristics of the accused." *LeBrun*, 363 F.3d at 724. Factors include, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera,* 389 F.3d 772, 779 (8th Cir. 2004)).

Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *LeBrun,* 363 F.3d at 724, "[c]ases in which a defendant can make a colorable argument that a self- incriminating

statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

Based on the factual findings, there is no credible evidence to suggest that Davis's post-*Miranda* statements were involuntary. Specifically, the evidence demonstrates that Officer Burton advised Davis of his rights both at the residence and at the police station. The evidence also demonstrates that Davis understood his rights. Indeed, before writing out his statement at the police station, Davis signaled his understanding by initialing next to each right as it was read to him; he then signed the Warning and Waiver form. *See* Govt. Exh. 3. Officer Burton testified, credibly, that his interactions with Davis were cordial at all times, and there was no evidence presented to suggest that, after advising Davis of his *Miranda* rights, Officer Burton, or any other officer, threatened or intimidated Davis in any way. Officer Burton testified, credibly, that when he questioned Davis, he did not have his gun drawn, did not make Davis any promises, and did not raise his voice or otherwise threaten or attempt to intimidate Davis. Although the atmosphere both at the residence and at the police station was clearly police-dominated, there is no evidence that the police engaged in any strategies or strong-arm tactics and/or dragged out Davis's questioning such that Davis's will was overborne. Indeed, as Officer Burton credibly testified, the entire encounter between the police and Davis—from execution of the search warrant through Davis's written statement—lasted no more than two hours.

For all of the foregoing reasons, Davis's motion to suppress his post-*Miranda* statements should be denied.

### C.  Motion to Disclose Identity of Confidential Informant (Doc. 54)

Davis contends that. under *Rovario v. United States,* 353 U.S. 53, (1957), the United States must disclose the identity of the confidential informant referenced in the search warrant affidavit prior to trial. Doc. 54.[1] In *Rovario*, the Supreme Court recognized the government's privilege to withhold the identity of informants. This privilege is not absolute. An accused who seeks disclosure of an informant's identity has the burden of showing that the need for disclosure outweighs the government's privilege to withhold the identity of its confidential informants. *U.S. v. Lapsley,* 263 F.3d 839 (8th Cir. 2001). This requirement strikes a balance between the public interest in protecting the source of information and the defendant's right to prepare a defense. *See Rovario,* 353 U.S. at 62.

The defendant satisfies his burden by showing that disclosure is relevant and helpful to his defense or essential to a fair trial. *Lapsley,* 263 F.3d at 841. The defendant "must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.* at 843 (quoting *U.S. v. Harrington,* 951 F.2d 876, 877 (8th Cir. 1991)). While there is no litmus test for determining when disclosure is required, the Eighth Circuit has held that "perhaps the most important factor for a court in this circumstance is to consider whether the [informant's] information is material to the defense." *United States v. Lapsley,* 334 F.3d 762, 764 (8th Cir. 2003). The Eighth Circuit has further held that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* When an informant "merely conveys information to the government but

---

[1] In response to Defendant's motion, the United States argued, with force, that established precedent precludes Defendant's request for disclosure of the identity of a confidential informant at a suppression hearing where guilt or innocence is not the issue. *See* Doc. 55, and cases cited therein. In response to this contention, at the evidentiary hearing defense counsel appeared to concede the points raised by the United States and argued instead that Defendant was requesting disclosure of the informant's identity, not for purposes of the suppression hearing, but for purposes of trial. As such, this Report and Recommendation does not address the question of whether Defendant is entitled to disclosure of the identity of the confidential informant for purposes of the suppression hearing.

neither witnesses nor participates in the offense," disclosure is typically not required. *Id.*

Here, Davis is charged with being a felon in possession of a firearm. As such, evidence that Davis was a convicted felon in possession of a firearm will be central to both the government's case and Davis's defense at trial. There is no question that, according to the Affidavit, the informant, JJD, told police both that JJD knew Davis was a convicted felon who served time in federal prison and that, while in the residence, JJD saw Davis in possession of a semi-automatic handgun. As such, JJD appears to have personal knowledge of facts that are relevant to the case and could, arguably, serve as a witness at trial. However, the United States denies that it intends to call JJD as a witness and argues persuasively that JJD's role is little more than that of a "tipster" whose tip triggered the investigation.

Indeed, as the United States pointed out in its response, JJD was not present at the time the search warrant was executed and there is no evidence he/she was involved in the crime with which Davis is charged—felon in possession of a firearm. Under the circumstances presented here, JJD's role amounted to little more than that of a tipster whose disclosure is not required under *Rovario*. *See, e.g., U.S. v. Bourbon,* 819 F.2d 856, 860 (8th Cir. 1987) (holding that informant who was admittedly in house of defendant charged with possession with intent to distribute cocaine, not distribution of cocaine, was a tipster where informant personally observed drugs in house but was not present during the execution of the search warrant or seizure of the evidence).

Finally, Davis has failed to articulate how or why information known by JJD is material to his defense or the prosecution of this case. As previously noted, the United States is not planning to call JJD as a witness at trial and Davis has offered no evidence to suggest that, if called, JJD's testimony would benefit Davis in any way. If JJD were called and testified consistently with the Affidavit, that information would only strengthen the prosecution's case against Davis. Because

of evidence police developed independently of JJD, it does not appear that JJD's testimony would be material even if JJD were to testify contrary to information in the Affidavit or if Davis was able to successfully attack JJD's credibility. The record evidence in this case established that after JJD conveyed information to the police, police independently confirmed that Davis was, in fact, a convicted felon. The evidence further shows that, while executing a judicially authorized search of Davis's residence, police discovered two firearms and ammunition in the residence. This evidence developed independently of JJD tends to blunt the import of any information JJD may or may not have provided to police.

Because Davis has failed to demonstrate that JJD's testimony is material to the defense or prosecution of this case, Davis's motion for disclosure of the government's informant prior to trial should be denied.

## III.  CONCLUSION

For all of the foregoing reasons, Davis's Motion to Suppress Physical Evidence (Doc. 48) and Motion For Disclosure Of The Government's Informant (Doc. 54) should be denied. However, Davis's Motion to Suppress Statements (Doc. 46) should be granted with respect to his pre-*Miranda* statement at the residence, and denied in all other respects.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: February 1, 2018.

19